

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHARYN D. POWERS as Guardian of HERBERT
HOFMANN, an Incapacitated Individual, and
Individually,

                              Plaintiff,

        -against-

ALEJANDRO LUIS AUGUSTO RABUFFETTI,

                             Defendant.
-------------------------------------------------------X

Civ. File No. 08 CV 5647

**COMPLAINT**

Plaintiff Charyn D. Powers as Guardian of Herbert Hofmann, an Incapacitated Individual, and individually, by her attorney, Nathan M. Ferst, complains of Defendant as follows:

### JURISDICTION

1.     This Court has jurisdiction of this matter pursuant to 28 USC §1332 in that Plaintiff is a citizen of Connecticut and Defendant is a citizen of Argentina and the sum in controversy exceeds $75,000.00, exclusive of costs and interest.

### VENUE

2.     Venue is proper in this District pursuant to 28 USC §1391(a) in that jurisdiction hereof is founded only upon diversity of citizenship and the claims made herein arise in part in this District and, further, pursuant to 28 USC §1391(d) in that Defendant is an alien.

## PARTIES

3. Plaintiff Charyn D. Powers on July 7, 2004 was appointed by the Honorable William Davis, Justice of the Supreme Court of the State of New York, to be the Guardian of the person and property of Dr. Herbert Hofmann (In the Matter of Dr. Herbert Hofmann, an Incapacitated Individual Pursuant to Article 81 of the Mental Hygiene Law, in the Supreme Court of the State of New York, New York County, Index No. 500012/04, hereafter "the New York Guardianship Proceedings").

4. Plaintiff timely qualified her appointment as such Guardian and continues in her capacity as Guardian with all rights, duties and obligations thereof.

5. Plaintiff brings the instant action both in her representative capacity for the benefit of Dr. Herbert Hofmann ("Hofmann") and in Plaintiff's individual capacity.

6. Defendant Alejandro Luis Augusto Rabuffetti ("Rabuffetti") is an individual who, upon information and belief, is a citizen of Argentina who resides in Buenos Aires, Argentina.

## FACTS

7. Until in or about 2003, Hofmann was competent.

8. Upon information and belief, during 1998 and 1999 Rabuffetti intimidated Hofmann and tried to coerce and exert undue influence on Hofmann to execute a will and a trust favoring Rabuffetti.

9. During said period Hofmann hired several lawyers to protect Hofmann from Rabuffetti.

10. During the Spring and Summer of 1999 Hofmann had a serious falling out with Rabuffetti.

11. Upon information and belief, in or about May of 1999, while Hofmann was ill in the hospital, Rabuffetti tried to make Hofmann sign documents, without the benefit of counsel, which documents would benefit Rabuffetti and give Rabuffetti an interest in assets of Hofmann.

12. Thereafter in 1999, upon information and belief, Hofmann called Rabuffetti a liar and cheat and told Rabuffetti and others that Hofmann did not want to see Rabuffetti anymore.

13. After Hofmann became incompetent, one Genevieve Pignarre ("Pignarre") in or around July of 2003 purported to marry Hofmann in a civil ceremony in the County of New York, and in the early part of 2004 spirited Hofmann out of the United States, and kept Hofmann in captivity in Paris, France.

14. Upon information and belief, prior to Pignarre's purporting to marry Hofmann, Pignarre consulted with Rabuffetti.

15. Upon information and belief, after Pignarre purported to marry Hofmann and spirited Hofmann out of the United States, Rabuffetti aided Pignarre in keeping Hofmann in captivity in Paris, France.

16. The Supreme Court of the State of New York, County of New York annulled the marriage between Pignarre and Hofmann null and void by reason of Hofmann's lack of mental capacity.

17. In or about January of 2004, the New York Guardian proceedings were commenced in the Supreme Court of the State of New York, County of New York.

18. Rabuffetti was a party to the Guardianship proceedings before the Supreme Court of the State of New York, County of New York.

19. In the course of the New York Guardianship Proceedings, Rabuffetti in 2004 objected to the Supreme Court of the State of New York, County of New York to that Court's declaring Hofmann mentally incompetent and stated under oath both by affidavit and testimony in open court that Hofmann was then still mentally competent.

20. While making sworn statements to the Supreme Court of the State of New York, County of New York, that Hofmann was still mentally competent, Rabuffetti was, together with Pignarre, keeping the then mentally and physically disabled Hofmann in captivity.

21. In 2004 during the period in which Rabuffetti kept Hofmann captive as aforesaid, Rabuffetti barred the visit of, and medical examination by, a physician directed by the Supreme Court of the State of New York to visit Hofmann in Paris and to report to the Court on Hofmann's mental condition.

22. Further in 2004 during the period in which Rabuffetti kept Hofmann captive as aforesaid, Rabuffetti claimed that Hofmann had asked Rabuffetti to block such medical visit and examination and, further, to block any contact between Hofmann and Plaintiff, who was then Hofmann's guardian.

23. Further in 2004 during the period in which Rabuffetti kept Hofmann captive as aforesaid, Rabuffetti claimed to the Honorable William J. Davis, Justice of the Supreme Court of the State of New York, that Hofmann was mentally well and that Hofmann had asked Rabuffetti to retain lawyers to appear on Hofmann's behalf in the New York Guardianship Proceedings.

24. Thereafter in 2004, after both the Court Evaluator appointed by the Supreme Court of the State of New York and the physician designated to examine Hofmann reported to the Supreme Court of the State of New York that Hofmann was mentally incompetent, Rabuffetti brought two motions in the New York Guardianship Proceedings:

(a) in the first motion, Rabuffetti applied to the Court to be appointed as guardian of the person and property of Hofmann; and

(b) in the second motion, Rabuffetti accused Plaintiff and persons associated with Plaintiff of wrongdoing concerning Hofmann and of taking control of Hofmann's assets for Plaintiff's personal gain and for the personal gain of persons associated with Plaintiff, and objected to the appointment of Plaintiff as Hofmann's guardian and sought to remove Plaintiff from any such position.

25. The Supreme Court of the State of New York dismissed Rabuffetti's contentions and denied both of his above applications on the merits.

26. Rabuffetti appealed the denial of his aforesaid motions but failed to perfect such appeals.

27. In 2004 during the period in which Rabuffetti kept Hofmann captive as aforesaid, the Honorable William J. Davis, Justice of the Supreme Court of the State of New York said, in open court and in the presence of Rabuffetti, that Hofmann had been kidnapped and held for ransom.

28. Notwithstanding the July 7, 2004 Order of the Supreme Court of the State of New York appointing Plaintiff Guardian of the person and property of Hofmann and revoking all powers of attorney issued by Hofmann, Rabuffetti is now claiming authority

over Hofmann's affairs and continues to hold himself out as holding Hofmann's Powers of Attorney, and Rabuffetti continues to exercise same.

29. Notwithstanding the dismissal by the Supreme Court of the State of New York of all of Rabuffetti's claims of wrongdoing by Plaintiff and persons associated with Plaintiff, and the denial by the Supreme Court of the State of New York of Rabuffetti's aforesaid motions, Rabuffetti has renewed his claims of wrongdoing by Plaintiff and persons associated with Plaintiff in a Buenos Aires court thousands of miles away from Plaintiff and Hofmann, alleging, among other things, that Plaintiff and persons associated with Plaintiff are seeking to harm and kill Hofmann.

30. Rabuffetti's participation and motions in the course of the New York Guardianship proceedings, his complaint in the Buenos Aires Court, and all of his other acts, including the attempts to exercised revoked powers of attorney, have been made for Rabuffetti's own monetary benefit.

31. Rabuffetti has claimed and continues to claim, among other things, that:

(a) Plaintiff and persons associated with Plaintiff defrauded Hofmann in New York in 1998, 1999, and 2001, during which time(s) Rabuffetti now claims Hofmann was mentally incompetent, in contradiction to Rabuffetti's claims in the course of the New York Guardianship proceedings that Hofmann was competent in 2004;

(b) Plaintiff's alleged fraud, and the fraud of persons associated with her, during Hofmann's period of mental incapacity frustrated Hofmann's alleged wishes that Rabuffetti should become the owner of Hofmann's apartment and valuable cemetery plots in Buenos Aires;

(c) the revocation in 1998 by Hofmann of prior powers of attorney which Hofmann had executed in 1995 relating to said apartment and cemetery plots, as well as the execution by Hofmann in 1995 of new powers of attorney, were fraudulently obtained by Plaintiff and persons associated with Plaintiff from Hofmann at a time during which, according to Rabuffetti, Hofmann was mentally incompetent;

(d) as part of the same alleged fraud during the time in which Rabuffetti now claims that Hofmann was mentally incompetent, a 1999 Last Will and Testament made by Hofmann in New York, in which Rabuffetti was named as co-executor and beneficiary, was in 1999 changed in New York by codicils to exclude Rabuffetti from such position and benefits;

(e) Rabuffetti was named by Hofmann in New York as co-trustee and beneficiary of a trust and that this, too, was changed in New York by the above mentioned fraud to cause Hofmann to eliminate Rabuffetti from such position and benefits in 1999 when, according to Rabuffetti, Hofmann was mentally incompetent;

(f) Rabuffetti owned the shares of a company which, in turn, owned an apartment in Paris ("the Paris Apartment") and that, due to the above alleged fraud on Hofmann by Plaintiff and persons associated with Plaintiff, Rabuffetti lost or is deprived of the ownership of said shares and of the Paris apartment;

32. Rabuffetti claims that the above mentioned alleged acts make Plaintiff guilty both criminally culpable and civilly liable for compensation to Rabuffetti and to Hofmann concerning assets relating to Hofmann, such as the aforesaid Buenos Aires and Paris apartments, Buenos Aires cemetery plots, and assets of a trust relating to Hofmann.

33. Rabuffetti complains, among other things, that:

> ... the maneuver to deprive me of the piece of property donated to me by my friend Mr. Herbert Hofmann consisted in <u>taking advantage of Herbert Hofmann's diminished mental capacity and make him [sic] sign documents without understanding their real significance so as to obtain illegal material benefits that affect my estate</u> ... a series of acts took place with the physical presence [in New York] of Mr. Herbert Hofmann by taking advantage of his diminished mental capacity ... The fraudulent attitude of the <u>supposed</u> "guardians" of Dr. Hofmann's assets, Dr. Arie E. David and her [sic] daughter Charyn David Powers... the responsibility for the fraud should be attributed exclusively to [Plaintiff herein who] acted as authors of the fraudulent acts, <u>with the intention of obtaining undue profit</u> by taking advantage of Mr. Herbert Hofmann's diminished physical condition ...

34. In truth and in fact, all of the above mentioned claims of Rabuffetti are false and contradicted by Rabuffetti's own sworn statements to the Supreme Court of the State of New York.

35. Upon information and belief, in truth and in fact, Hofmann is the sole beneficiary of the trust for Hofmann's benefit.

36. In truth and in fact, Plaintiff is not and never has been a beneficiary of any asset, property, trust, will, or estate of Hofmann and neither Plaintiff nor persons associated with her has ever received assets of Hofmann.

37. In truth and in fact, Hofmann was mentally competent during the years 1998 to 2002.

38. In truth and in fact, Plaintiff had no contact whatsoever with Hofmann in 1998.

39. In truth and in fact, according to the medical records and other extensive medical evidence that were introduced both during hearings in the New York Guardianship Proceedings and in Hofmann's marriage annulment proceedings in

the Supreme Court of the State of New York (Charyn D. Powers, as Guardian of Herbert Hofmann v. Genevieve Pignarre, Index No. 306873/04), Hofmann was mentally competent during the years 1998 to 2002.

40. In truth and in fact, all the aforementioned documents reflect Hofmann's true wishes and were executed by Hofmann when he was mentally competent.

41. In truth and in fact, upon information and belief, such alleged trust of which Rabuffetti is a beneficiary and or trustee was never established by Hofmann, and no such trust instrument ever existed.

42. In truth and in fact, upon information and belief, Rabuffetti was never an owner of the aforementioned apartment in Paris or a shareholder of the owner of said apartment in Paris.

43. Rabuffetti claims, among other things, that "... [Plaintiff and persons associated with Plaintiff] fraudulently conveyed the title to [Hofmann's Buenos Aires apartment] to a ghost company in Gibraltar, and they not only deprived me of my legitimate right but also harmed Herbert [Hofmann]..."

44. In truth and in fact, Plaintiff never conveyed such property at any time to anyone and, upon information and belief, the company which holds title to the aforesaid Buenos Aires apartment is not a ghost company but, rather, a valid company of which Hofmann is the ultimate beneficiary.

45. Rabuffetti claims that "... [Plaintiff and persons associated with Plaintiff] sued notary public Joseph Branca, as well as Esther Branca and John Does..."

46. In truth and in fact, neither Plaintiff nor persons associated with Plaintiff ever sued Joseph Branca or Esther Branca regarding any matter, nor was Plaintiff or persons associated with Plaintiff involved in such suit.

47. Rabuffetti claims that "The Corporation Henry Mar Inc., owner of the apartment where Mr. Herbert Hofmann lives at present, and of which I owned a 30%, a share that has been taken away from me and I have only been able to find out that the newly appointed directors are Mr. Anthony Pell and [Plaintiff]."

48. The foregoing statement is false as, on information and belief, Rabuffetti was never the owner of 30% or of any portion of the shares of said Henry Mar Incorporated (the correct name of the Corporation), the owner of the apartment in which Hofmann lived in Paris, and Plaintiff is not and never has been a director of that company.

49. All of the claims made by Rabuffetti in Buenos Aires, Argentina fall squarely within the exclusive jurisdiction of the courts in New York as: Hofmann at all the relevant times was not even once in Argentina, but was a resident of New York; Plaintiff herein at all relevant times was not in Argentina even once, but, was a resident of the State of Connecticut; all of the acts complained of by Rabuffetti, including the relevant acts of Hofmann and the alleged acts of Plaintiffs herein, took place in New York and Connecticut, including, without limitation, Hofmann's execution in New York of powers of attorney allegedly to "donate" Hofmann's apartment and cemetery plots to Rabuffetti, Hofmann's revocation in New York of the above powers of attorney and of the above "donations" to Rabuffetti, and Hofmann's revocation in New York by codicils of Rabuffetti's benefits from Hofmann's New York Last Will and Testament; all of the

aforementioned documents claimed by Rabuffetti to have been executed by Hofmann were executed in New York; during all relevant times, Hofmann was not in Argentina, nor was Plaintiff; one of Rabuffetti's claims in Buenos Aires, Argentina is that Plaintiff instituted a lawsuit in the Supreme Court of the State of New York in which the court ordered that ownership of the Buenos Aires apartment should revert to Hofmann.

50. All of the acts claimed by Rabuffetti to have been committed by Plaintiff occurred in New York.

51. The sole contact that Plaintiff herein had with Rabuffetti was in New York.

52. At all relevant times, the only contact that Plaintiff herein had with Hofmann was in New York.

53. All of the allegedly fraudulent acts claimed by Rabuffetti to have been committed by Plaintiff and all of the allegedly fraudulent documents, i.e., powers of attorney, deeds, Last Will and Testament, codicils, etc., were drawn by attorneys in New York and were executed in New York, and Hofmann's signing of codicils to his Last Will and Testament was attended by witnesses in New York under the supervision of attorneys in New York.

54. When it suits his interests, Rabuffetti claims that Hofmann was mentally competent (i.e., in March, 1999 when Hofmann made his Will and in May, 2004 when Rabuffettti opposed in New York the appointment of a Guardian for Hofmann), but when it suits his other interests, Rabuffetti claimed that Hofmann was mentally incompetent at the same times and, indeed, much earlier (i.e., in 1998 when Hofmann revoked a 1995

Power of Attorney to Rabuffetti regarding the Buenos Aires apartment and in June, 1999 when Hofmann made changes to his Will).

55. Rabuffetti waited until after Hofmann was declared mentally incompetent to bring his claim to court, so that Hofmann would no longer be able to refute Rabuffetti's bare assertions.

### FIRST CLAIM - DECLARATORY JUDGMENT

56. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 though and including 55, above, with the same force and effect as though same were herein set forth again at length.

57. Hofmann executed four Powers of Attorney in favor of Rabuffetti:

(a) Hofmann in New York executed in favor of Rabuffetti a Power of Attorney dated May 18, 1995 concerning Hofmann's apartment and two cemetery plots in Buenos Aires. On September 15, 1998 Hofmann in New York revoked said Power of Attorney and again on April 29, 1999. On July 2, 2001, however, upon information and belief, Rabuffetti purported to exercise said Power of Attorney by making a public record of same after its revocation and trying to transfer said apartment to Rabuffetti's name. Further, in May, 2006, after this Court adjudicated Hofmann an incompetent and terminated all prior Powers of Attorney given by Hofmann, Rabuffetti has asserted a claim to exercise said revoked Power of Attorney.

(b) On January 22, 1999 Hofmann in New York executed in favor of Rabuffetti Power of Attorney concerning payment of Hofmann's medical bills. On April 29, 1999 Hofmann in New York revoked said Power of Attorney.

d-68-78

12

(c) On January 29, 1999 Hofmann in New York executed in favor of Rabuffetti a Durable General Power of Attorney. On April 29, 1999 Hofmann in New York revoked said Power of Attorney. Notwithstanding such revocation, Rabuffetti holds himself out as still holding this Power of Attorney.

(d) On March 25, 2004 Hofmann, while incompetent and in the custody of Rabuffetti and Pignarre, and after incompetency proceedings had been commenced in this Court, was made to sign a power purporting to give Rabuffetti and Pignarre power and control over all of Hofmann's assets.

58. Plaintiff as Guardian of Hofmann has no information as to what actions Rabuffetti has taken and what assets of Hofmann's Rabuffetti has seized while claiming to hold the above Powers of Attorney.

59. Despite sole jurisdiction over the well being and assets of Hofmann in the courts in New York, Rabuffetti makes claims in Buenos Aires, Argentina in great part based upon the above Powers of Attorney.

60. By reason of the foregoing, judgment of this Court is necessary declaring that Rabuffetti's allegations and claims in Buenos Aires, Argentina are false and of no merit, that Rabuffetti is not owed any monies, properties, or other assets of Hofmann and/or by related persons and parties, including by Plaintiff, and that Hofmann and persons or parties associated with Hofmann, including Plaintiff herein, are not liable to Rabuffetti in damages, indemnification, or otherwise.

61. Plaintiff has no adequate remedy at law.

## SECOND CLAIM - ACCOUNTING

62. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 though and including 61, above, with the same force and effect as though same were herein set forth again at length.

63. By virtue of claiming to act pursuant to Powers of Attorney given by Hofmann, Rabuffetti is a fiduciary of Hofmann required to account and pay over to Plaintiff as Guardian all of the benefits to Rabuffetti flowing from said Powers of Attorney.

64. Plaintiff has no adequate remedy at law.

## THIRD CLAIM – CONSTRUCTIVE TRUST

65. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 though and including 64, above, with the same force and effect as though same were herein set forth again at length.

66. Any assets or benefits obtained by Rabuffetti from or on account of Hofmann have been and/or are being wrongfully obtained by virtue of Rabuffetti's false claims of having been given such assets or benefits by Hofmann.

67. By virtue of the foregoing, judgment of this Court is necessary impressing a constructive trust upon all such assets and benefits and declaring Rabuffetti to be the constructive trustee of Hofmann and Hofmann the beneficiary of such trust, and directing Rabuffetti to account and pay over to Plaintiff as Guardian all of said assets and benefits, and the profits from said assets and benefits.

68. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays this Court for judgment as follows:

    a.    ordering Rabuffetti to account for and turn over assets which in equity and good conscience belong to Hofmann, including transactions and assets pursuant to the aforementioned Powers of Attorney from Hofmann to Rabuffetti;

    b.    declaring void ab initio the Power of Attorney dated March 25, 2004 which Hofmann was made to sign while incompetent giving control of all of Hofmann's assets to Piguarre and Rabuffetti;

    c.    enjoining Rabuffetti and anyone acting through, for or under Rabuffetti from exercising any Power of Attorney given by Hofmann to Rabuffetti;

    d.    adjudging, ordering and decreeing after giving Rabuffetti a full opportunity to present his aforementioned claims, evidence, substantive issues and allegations, that Rabuffetti's claims and allegations regarding Hofmann and Hofmann's assets, are without merit;

    e.    adjudging, ordering and decreeing that Rabuffetti has no right, title, interest or claim in and to any property of Hofmann or relating to Hofmann or in and to Hofmann's estate, and that Hofmann did not wish Rabuffetti to receive any of the Hofmann's property or other assets as a gift or donation or otherwise, whether *inter vivos* or *causa mortis*;

    f.    declaring that Rabuffetti is not owed any monies, properties, or other assets of Hofmann and related persons and parties, and that Hofmann and persons or parties associated with Hofmann do not owe any monies to Rabuffetti;

    g.    compelling Rabuffetti and anyone acting through, for or under Rabuffetti to bring all of his claims as counterclaims herein and nowhere else;

    h.    enjoining Rabuffetti and anyone acting through, for or under Rabuffetti to cease assuming tasks, including, without limitation, for the protection of Hofmann's personal, financial and property's interests, that are within the exclusive tasks of Plaintiff as Guardian of the Person and Property of Hoffmann and that Rabuffetti and anyone acting through, for or under Rabuffetti shall not press claims, other than in courts in New York to the jurisdiction of which Plaintiff as Guardian of the Person and Property of Hoffmann is subject, concerning acts regarding Hofmann that were allegedly committed during a time when Hofmann was mentally incapacitated;

    i.    imposing on Rabuffetti costs, including legal fees to Hofmann's attorney and the fees of the Guardian's attorney, and of the Court appointed Evaluator, if any;

    j.    granting any other remedy or relief at law or in equity which the Court deems just and proper; and

    k.    awarding Plaintiff her costs and disbursements in this action.

Nathan M. Ferst

By: _____
Nathan M. Ferst NMF9655
Attorney for Plaintiff
350 Fifth Avenue, Suite 1000
New York, New York 10118
(212) 683-8055

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CHARYN D. POWERS as Guardian of HERBERT     Civ. File No.
HOFMANN, an Incapacitated Individual, and
Individually,

                                           Plaintiff,

     -against-


ALEJANDRO LUIS AUGUSTO RABUFFETTI,

                                     Defendant.
-----------------------------------------------------------------X


                                  **COMPLAINT**


                                      NATHAN M. FERST
                                  ATTORNEY FOR PLAINTIFF

                            By:_____
                               NATHAN M. FERST NMF9655
                           350 FIFTH AVENUE, SUITE 1000
                           NEW YORK, NEW YORK 10118
                               (212) 683-8055


d-68-80